**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **DENNIS A. ISOM** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **C.A. No. 06-441-S** |
| **GARDEN CITY MORTGAGE, LLC** | ) | |
| **DME HOLDINGS, LLC** | ) | |
| **DIRECT MAIL EXPRESS INC.** | ) | |
| **Defendants** | ) | |

## FIRST AMENDED COMPLAINT – CLASS ACTION

## INTRODUCTION

1. Plaintiff Dennis A. Isom brings this action to secure redress for a course of conduct that included the provision of consumer credit information of the plaintiff and numerous other residents of Massachusetts and Rhode Island by the Defendants DME HOLDINGS, LLC ("DME") and Direct Mail Express, Inc. ("Direct") in violation of the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq. ("FCRA") and the Defendant Garden City Mortgage, LLC. ("Garden City") wrongfully obtaining and using the consumer credit information of the plaintiff and numerous other residents of Massachusetts, Rhode Island, Connecticut, Maine and New Hampshire without plaintiff's consent or any lawful reason, in violation of the FCRA.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. §§1331 and 1337 and 15 U.S.C. §1681p ("FCRA").

3. Venue in this District is proper in that defendants do business in this District.

## LOCAL RULE 23 CLASS ACTION ALLEGATIONS

4. This claim is brought under Federal Rule 23(b)(3) on behalf of a class, consisting of (a) all persons with Massachusetts, Rhode Island addresses, Connecticut, Maine and New Hampshire (b) who defendant Garden City sent or caused to be sent material in the form represented by Exhibit A. Persons who responded to the material and obtained credit as a result of such response are excluded.

5. The class is so numerous that joinder of all members is impracticable. It is estimated that the class is composed of several thousand individuals. (The precise number of class individuals will be ascertained during discovery.)

6. Since Exhibit A is a form document, there are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members. The predominant common question is whether the provision of consumer credit information by the Defendants DME and Direct violated the FCRA and whether obtaining consumer credit information for the purpose of transmission of the material in Exhibit A violates the FCRA. Plaintiff's claims are typical of the claims of the class members. All are based on the same legal and factual issues.

7. Plaintiff will fairly and adequately represent the members of the class. Plaintiff is aware of his responsibilities as named class representative and has the ability and willingness to carry out those duties to protect each member of the putative class in accordance

with judicial precedent interpreting the requirements for adequacy of a class representative. Furthermore, Plaintiff has retained counsel experienced in the prosecution of similar claims.

**PARTIES**

8. Plaintiff Dennis A. Isom is an individual who resides in Providence, Rhode Island.

9. Defendant Garden City Mortgage, LLC (hereinafter "Garden City") is a corporation under the laws of Rhode Island with headquarters in Warwick, R.I. Upon information and belief, the defendant is a licensed mortgage broker in both, Rhode Island and Massachusetts.

10. Defendants DME HOLDINGS, LLC ("DME") and Direct Mail Express, Inc. ("Direct") maintain the same principal place of business at 2441 Bellevue Ave., Daytona Beach, FL 32114. Further, they have the same or similar ownership and management.

**FACTS**

11. During the two years preceding the filing of this action, plaintiff Dennis A. Isom received the documents attached as Exhibit A via the United States mail.

12. Exhibit A state: "This 'prescreened' offer of credit is based on information in your credit report . . . ."

13. On information and belief, the quoted statement is true.

14. On information and belief, Defendants DME and Direct solicits clients, such as the defendant Garden City, to sell direct mail services. To set itself apart from others offering similar services the Defendants assert on their website that "we also work with a

national risk score pre-screen database". See http://www.mortgagemailings.com/mlists.htm.

15. Defendant Garden City engaged DME and Direct for the "prescreening" of consumers based on information in consumer credit information held by a consumer reporting agency.

16. After conducting the prescreening, DME and Direct provided the consumer credit information to the Defendant Garden City for its use.

17. Based on the results of such "prescreening," defendant sent or caused to be sent mailers in the form represented by Exhibit A to numerous consumers, including the plaintiff.

18. Exhibit A is an example of a printed form document.

19. Exhibit A contains the trademarks and commercial symbols of Garden City.

20. On information and belief, defendant Garden City approved and authorized the dissemination of material in the form represented by Exhibit A.

21. The response telephone numbers and mail address on Exhibit A are used by defendant Garden City.

22. On information and belief, defendant Garden City obtained business as a result of the dissemination of mailers in the form represented by Exhibit A.

23. On information and belief, more than 200 mailers in the form represented by Exhibit A were sent to residents of Massachusetts and Rhode Island.

24. Plaintiff Dennis A. Isom had not authorized defendants to provide, access

or use plaintiff's consumer report or credit information.

25. Defendants had no reason to believe that plaintiff Isom had authorized defendants or defendants' agents to access plaintiff's consumer report or use information therein.

26. Plaintiff Dennis A. Isom did not initiate any transaction with defendants.

27. The FCRA, 15 U.S.C. §1681a(d), defines "consumer report" as follows:

**The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--**

**(A) credit or insurance to be used primarily for personal, family, or household purposes; . . .**

28. The FCRA, 15 U.S.C. §1681a(f), defines "consumer reporting agency" as:

**[A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.**

29. The FCRA, 15 U.S.C. § 1681a(u), defines "reseller" as

**Reseller. The term "reseller" means a consumer reporting agency that--**
**(1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; and**
**(2) does not maintain a database of the assembled or merged information from which new consumer reports are produced.**

30. The FCRA, 15 U.S.C. § 1681e (a) requires:

**(a) Identity and purposes of credit users. Every consumer reporting agency**

**shall maintain reasonable procedures designed to avoid violations of section 605 [15 USCS § 1681c] and to limit the furnishing of consumer reports to the purposes listed under section 604 [15 USCS § 1681b]. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. Every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report. No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 604 [15 USCS § 1681b].**

31. The FCRA, 15 U.S.C. § 1681e (e)(2) imposes obligations on resellers of consumer reporting:

**(2) Responsibilities of procurers for resale. A person who procures a consumer report for purposes of reselling the report (or any information in the report) shall--**
**(A) establish and comply with reasonable procedures designed to ensure that the report (or information) is resold by the person only for a purpose for which the report may be furnished under section 604 [15 USCS § 1681b], including by requiring that each person to which the report (or information) is resold and that resells or provides the report (or information) to any other person--**
**(i) identifies each end user of the resold report (or information);**
**(ii) certifies each purpose for which the report (or information) will be used; and**
**(iii) certifies that the report (or information) will be used for no other purpose; and**
**(B) before reselling the report, make reasonable efforts to verify the identifications and certifications made under subparagraph (A).**

32. The FCRA, 15 U.S.C. §1681b, provides it is permissible to obtain or use a consumer report on a consumer only with the written consent of the consumer or for certain "permissible purposes," such as the extension of credit to, or review or collection of an account of, the consumer, employment purposes, the underwriting of insurance, or in connection with a

business transaction that is initiated by the consumer, or to make a "firm offer of credit."

33. A CRA or Reseller must maintain procedures to assure that any requester is obtaining it for a permissible purpose and obtain a certification from the requester that a permissible purpose exists.

34. The requester must certify to the consumer reporting agency or reseller that a permissible purpose exists.

35. DME and Direct do not maintain procedures to assure requesters such as defendant Garden City are using it for permissible purposes.

36. DME and Direct did not obtain any certification from Garden City.

37. As noted, one "permissible purpose" is to extend a firm offer of credit or insurance to the consumer, even where this has not been requested by the consumer.

38. The sending of the material in Exhibit A does not constitute a permissible reason for anyone to access plaintiff's consumer report without plaintiff's consent.

39. The sending of Exhibit A does not qualify as a "firm offer of credit" within the meaning of the FCRA, justifying the obtention of a consumer report on a consumer, in that the purported offer (if one exists at all) is a sham, excessively vague and totally lacking in terms. It has no value beyond a solicitation for business, the sending of which is not a permissible purpose for accessing a consumer report. Cole v. U. S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004).

**VIOLATION ALLEGED AGAINST ALL DEFENDANTS**

40. Defendants obtained or used, or caused to be obtained or used, the

consumer report or consumer credit information of plaintiff Isom and every other person to whom Exhibit A were sent without their written permission or a "permissible purpose."

41. Defendants willfully violated the FCRA.

42. The FCRA, 15 U.S.C. §1681n, provides:

**§1681n. Civil liability for willful noncompliance**

**(a) In general. Any person who willfully fails to comply with any requirement imposed under this title [15 USC §§1681 et seq.] with respect to any consumer is liable to that consumer in an amount equal to the sum of–**

**(1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $ 100 and not more than $ 1,000; or**

**(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $ 1,000, whichever is greater;**

**(2) such amount of punitive damages as the court may allow; and**

**(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court. . . .**

43. The FCRA, 15 U.S.C. §1681p, provides:

**§1681p. Jurisdiction of courts; limitation of actions**

**An action to enforce any liability created under this title [15 USC §§1681 et seq.] may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within two years from the date on which the liability arises, except that where a defendant has materially and willfully misrepresented any information required under this title [15 USC §§1681 et seq.] to be disclosed to an individual and the information so misrepresented is material to the establishment of the defendant's liability to that individual under this title [15 USC §§1681 et seq.], the action may be brought at any time within**

**two years after discovery by the individual of the misrepresentation.**

**VIOLATION ALLEGED AGAINST DME AND DIRECT**

44. DME and Direct are consumer reporting agencies and resellers.

45. DME and Direct failed to maintain procedures as required by the FCRA, 15 USC § 1681e.

46. DME and Direct have failed to obtain the certifications required by the FCRA, 15 USC § 1681e.

47. DME and Direct have provided consumer reports and credit information in violation of the FCRA.

48. DME and Direct willfully violated the FCRA.

**CLASS ALLEGATIONS**

49. This claim is brought on behalf of a class, consisting of (a) all persons with Massachusetts, Rhode Island, Connecticut, Maine and New Hampshire addresses (b) to whom defendant Garden City sent or caused to be sent material in the form represented by Exhibit A (c) on or after a date two years prior to the filing of this action. Persons who responded to the material and obtained credit as a result of such response are excluded.

50. According to Exhibit A, the consumer report and credit information of each such individuals were accessed.

51. The class is so numerous that joinder of all members is impracticable.

52. Exhibit A is a form document.

53. There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members. The predominant common question is whether the Defendants obtaining and use of a consumer report or credit information for the purpose of transmission of the material in Exhibit A violates the FCRA.

54. The predominant common question for the claim against only DME and Direct alone is whether DME and Direct has maintained procedures and obtained certifications before making disclosures of consumer reports or credit information.

55. Plaintiff's claims are typical of the claims of the class members. All are based on the same legal and factual issues.

56. Plaintiff will fairly and adequately represent the members of the class. Plaintiff has retained counsel experienced in the prosecution of similar claims.

57. A class action is superior for the fair and efficient prosecution of this litigation. Classwide liability is essential to cause defendants to stop their improper conduct. Many class members may be unaware that they have been victims of illegal conduct.

WHEREFORE, plaintiff requests that the Court enter judgment in plaintiff's favor and in favor of the class for:

a. Appropriate statutory damages;
b. Injunctive relief against further violations;
c. Attorney's fees, litigation expenses and costs of suit;
d. Such other or further relief as is appropriate.

Respectfully submitted;

s/sChristopher M. Lefebvre #4019

CLAUDE F. LEFEBVRE AND
CHRISTOPHER M. LEFEBVRE, P.C.
Two Dexter Street
Pawtucket, RI 02860
P.O. Box 479 (Mailing address)
Pawtucket, RI 02862
(401) 728-6060
(401) 728-6534 (fax)
lefeblaw@aol.com

and

Scott C. Borison
Admitted Pro Hac Vice
Legg Law Firm, LLC
5500 Buckeystown Pike
Frederick MD 21703
Borison@legglaw.com
(301) 620-1016

**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury of his claims.

s/sChristopher M. Lefebvre

# EXHIBIT A

PRESCREEN & OPT-OUT NOTICE: This "prescreened" offer of credit is based on information in your credit report indicating that you meet certain criteria. This offer is not guaranteed if you do not meet our criteria [including providing acceptable property as collateral]. If you do not want to receive prescreened offers of credit from this or any other companies, call toll free 1-888-567-8688, Equifax Options, P.O. Box 740123 Atlanta, GA 30374, Experian Information Systems, Inc., P.O. Box 919, Allen, TX 75013, Trans Union LLC, P.O. Box 505, Woodlyn, PA 19094-0505 or by calling 1-888-5OPTOUT.

TERMS AND CONDITIONS: This offer is extended because you appear to satisfy certain credit criteria derived from information contained in a pre-qualifying report received from a credit reporting agency used by us. The amount and terms of any credit offer we extend to you will be determined by your credit history, your capacity to make payments and available equity in you home. You may no longer qualify if you do not continue to meet the criteria used to select your name for this offer or any applicable criteria on creditworthiness, or if you do not or cannot furnish any required collateral. To qualify for this offer you may be required to provide up to two years of income verification. This offer is made under the assumption that you will qualify for a minimum of $10,000 equity line and that your debt-to-income ratio cannot exceed 50%, other programs may be available with a higher level of debt. *Credit severity may affect down payment.* The lender may also choose to cancel this offer if it is unable to verify information you have provided. You must be at least 18 years of age. All bankruptcies must be discharged. This pre-approved offer is non-transferable, is available only to single family residences or owner-occupied condominiums, and is not valid on mobile homes or cooperatives. The lender, or an affiliated lender must be in a valid first or second lien position and property hazard insurance is required.

PRE-SORTED
FIRST CLASS MAIL
U.S. POSTAGE
PAID
33634
PERMIT NO. 2401

**Financial Information Enclosed**

Mortgage Notice
FORM 2041-R

**IMPORTANT NOTICE**

Dennis Isom
189 Ophelia St
Providence, RI 02909-5735

6R3949C

LOAN REVIEW DEPARTMENT

LOAN MEMORANDUM

*Please read this document carefully.*
*It is of personal importance to you financially.*
*You are pre-approved!**

Dennis Isom:

As a Homeowner, you have been chosen to receive the enclosed information to inform you of a special Government program for which you may qualify. This program is being offered for a limited time and is designed to allow Homeowners, like yourself, the opportunity to refinance or purchase your current home, **even if you have had a Bankruptcy.**

A Specialist will assist you in examining the program which is now available through the Fannie Mae & Freddie Mac Foundations. You may qualify if you have had a prompt payment history with your creditors and no foreclosures in the past 24 months.

This program will allow you to:

COMBINE 1ST AND 2ND MORTGAGES

PAYOFF CREDIT CARDS

REDUCE MONTHLY PAYMENTS

IMPROVE MONTHLY CASH FLOW

$ CASH OUT FOR REMODELING OR OTHER USE $

LOWER INTEREST RATES

With one simple phone call you can find out if you qualify for all of the benefits offered by this program. After a brief consultation and review of the information you provide, a team of experts will go to work to expedite the processing of your loan.

If you do not qualify for this special program, other financing options may be available. A Specialist will assist you in determining your eligibility and which program is right for your individual circumstances. **See terms and conditions on other side.*

To take advantage of this opportunity, please contact

David O'Neil
Toll Free: **877-521-1399**

Loan Review Department of
GARDEN CITY MORTGAGE, LLC
Toll Free: 877-521-1399

You can choose to stop receiving "prescreened" offers of credit from this and other companies by calling toll free 1-888-567-8688. See PRESCREEN & OPT-OUT NOTICE on other side for more information about prescreened offers.

Garden City Mortgage, LLC • 250 F Centerville Road • Warwick, RI 02886. We do not make loans; we arrange loans.
Licensed Mortgage Broker • RI License #2003150LB, New Hampshire Mortgage Brokers License #'s first mortgage 10380-MBR, second mortgage 10381-MBR, Maine CS 07509, Connecticut Mortgage Broker License #'s 12614,12615, Massachusetts Mortgage Broker License No.MB3317, Florida CL 0600291, MB 0628371

6R3949C